# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NO. 09cr213(EGS) |
| v. | : | Sentencing Hearing: September 08, 2010 |
| | : | |
| SHELBY LEWIS | : | |
| Defendant. | : | |

## UNITED STATES' MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby respectfully submits its Memorandum in Aid of Sentencing. In support thereof, the United States respectfully states the following:

### Factual and Procedural Background

1. On September 1, 2009, a Grand Jury returned a nine count indictment charging the defendant, Shelby Lewis with Sex Trafficking of Children by Force, Fraud and Coercion in violation of 18 U.S.C. §1591(a)(1) and Interstate Transportation of Minor for Purposes of Prostitution in violation of 18 U.S.C. § 2423(a). The defendant was arrested on September 10, 2009 and held without bail.

2. On December 31, 2009, defendant Shelby Lewis enter a plea of guilty to counts one, four, six and eight of the indictment for Sex Trafficking of Children by Force, Fraud or Coercion, in violation of Title 18 of the United States Code, Section 1591 (a)(1).

**Minor Victims**

3.      T.S. was born on November 19, 1992. T.S. ran away from home in March 2006 at the age of 13 and was reported missing. On June 2, 2009, the Maryland State Police Child Recovery Unit contacted Metropolitan Police Department Detective Jonathan Andrews and notified him of the whereabouts of T.S. When T.S. was recovered in the 3000 block of Southern Avenue, S.E., Washington, DC, T.S. informed Det. Andrews that she had been working as a prostitute for the defendant from approximately the age of 13 to 16.

4.      T.S. reported that the day after she ran away, she fell asleep at a bus stop near the Iverson Mall in Maryland. The defendant was in a Red Pathfinder when he pulled up next to T.S. and asked her if she needed a place to stay. T.S. replied that she did and the defendant stated to her that she could stay with him and his family in Temple Hills, Maryland. After approximately two days, the defendant told T.S. that she needed to go out and make money working for him as a prostitute. Starting that day, and for approximately three years, the defendant drove T.S. into the District to work as a prostitute.

5.      In addition to working on the streets for the defendant, T.S. said that the defendant regularly engaged in sexual acts with her during the time she lived at his residence. T.S. also advised that the defendant hit her in the face for things such as withholding money or not getting along with the other girls in the house. T.S. reported that the defendant always had a handgun with him in his cars or that he hid in his basement.

6.      S.H. was born on November 12, 1993. S.H. worked for the defendant starting when she was 12 years old. S.H. stopped working for the defendant at the age of 14, after her social worker found a letter that S.H. had written to the defendant back when she was 12 years old. The

letter made references to S.H. working for the defendant, their sexual "relationship", her being in love with the defendant and her jealousy of the other women in the defendant's life.

7.      According to S.H., she ran away from home when she was approximately 11 years old because she was afraid that she would get into trouble for taking candy from a store.  S.H. was in her school uniform when the defendant found her asleep at a bus stop at 2 a.m.  The defendant took S.H. to his home in Temple Hills, Maryland and that same night the defendant engaged in sexual acts with her.  S.H. told the defendant her true age.  The defendant was aware of S.H.'s age because he participated in meetings with Prince George's County Department of Social Services, her biological father Kevin Sockwell, her parental aunt Gloria Sockwell and other relatives.  The meetings were conducted to determine where S.H. would live.  Astoundingly, it was determined that the defendant's home was an appropriate place for her to reside and therefore S.H. was temporarily placed in the defendant's care.  According to S.H., during the time she resided with the defendant, he had vaginal, oral and anal sex with S.H.

8.      S.H. worked as prostitute for the defendant in Washington, DC and Maryland.  S.H. became so attached to the defendant that she believed he was both like a father and like a boyfriend.

9.      M.S. was born on May 13, 1993.  M.S. reported that she met the defendant one day when she was walking down the street.  The defendant asked M.S. her age and she told him that she was 20.  The defendant asked her if she had a license and she said that she did not.  At this time, the defendant told M.S. that he was a pimp.

10.     That same day the defendant had sex with M.S., because the defendant claimed he needed to have sex with M.S. to find out how much she was worth.  Later that night, the defendant drove M.S. into Washington, D.C. and she performed acts of prostitution.  M.S.  gave all of the

money she made to the defendant. M.S. reported that in May 2009 she worked for two weeks as a prostitute for the defendant. During that time she was 16 years old. M.S. reported that the defendant had a gun and threatened to kill her if she did not give him all of the money she made prostituting for him. M.S. also stated that the defendant physically forced her to snort "dope", meaning cocaine.

11. A.L. was born on December 21, 1994. A.L. had runaway from a group home that was located in Maryland. A.L. went to a friend's house and that person put her in contact with M.S. A.L. reported that a short time after speaking with M.S., she was picked up by M.S. and the defendant. A.L. stated that they went to the defendant's home and smoked marijuana.

12. A.L. worked as a prostitute for the defendant for approximately three days in May 2009 when she was 14 years old. On her third day of working for the defendant, she was arrested.

### Statutory Penalties

13. Pursuant to Title 18 of the United States Code, Section 1591(a)(1)(b)(1) the offense of Sex Trafficking of Children, by Force, Fraud or Coercion (counts 1 and 4) carries a potential maximum statutory penalty of 15 years to Life imprisonment and a maximum fine of $250,000. Pursuant to Title 18 of the United States Code, Section 1591(a)(1)(b)(2) the offense of Sex Trafficking of Children, by Force, Fraud or Coercion (counts 6 and 8) carries a potential maximum statutory penalty of 10 years to Life imprisonment and a maximum fine of $250,000. Pursuant to Title 18 of the United States Code, Section 3583(k), a term of supervised release for not less than five years and potentially for as much as life is applicable. Additionally, Pursuant to Title 18 of the United States Code, Section 3663A(a)(1) and (3), the Court shall enter an order for restitution.

**Sentencing Guidelines**

14.     The Federal Sentencing Guidelines calculation set forth in the Presentence Report (PSR) are as follows:

Count 1: The PSR places the defendant's base offense level at 34 because T.S. was under the age of 14 at the time of the offense. See PSR ¶16. The PSR accounts for a 2 point increase because T.S. resided with the defendant at the time of the offense, thus affording the defendant supervisory control. See PSR ¶17.

15.     Count 4: The PSR places the defendant's base offense level at 34 because S.H. was under the age of 14 at the time of the offense. See PSR ¶22. The PSR accounts for a 2 point increase because S.H. was under the custody, care or supervisory control of the defendant at the time of the offense. See PSR ¶24.

16.     Count 6: The PSR places the defendant's base offense level at 30 for count 6 because M.S. was under the age of 18. See PSR ¶ 30. The PSR accounts for a 2 point increase because M.S. resided with the defendant at the time of the offense, thus affording the defendant supervisory control. See PSR ¶31. The PSR accounts for 2 point increase because the defendant unduly influenced M.S. to engage in prohibited sexual conduct by threatening bodily harm.

17.     Count 8: The PSR places the defendant's base offense level at 30 for count 6 because A.L. was under the age of 18. See PSR ¶ 38. The PSR accounts for a 2 point increase because A.L. resided with the defendant at the time of the offense, thus affording the defendant supervisory control. See PSR ¶39.

18.     The PSR accounts for a combined adjusted offense level of 40. See PSR ¶51. The PSR accounts for a 5 point enhancement because the defendant was engaged in a pattern of activity

involving prohibited sexual conduct. See PSR ¶52. The PSR also correctly affords the defendant a three-point reduction in his guidelines calculation for acceptance of responsibility, which makes his total offense level a 42. See PSR ¶54. The base criminal history score is 2, which establishes a criminal history category of II. See PSR ¶ 59. The Guideline range for the defendant is 360 months to Life imprisonment. See PSR ¶ 107.

### Sentencing Recommendation

19.   All of the applicable factors set forth in Title 18 United States Code, Section 3553(a), should be considered by this Court. See United States v. Gall, 128 S.Ct. 586 (2007). These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. §3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); and the need to avoid unwarranted sentence disparities (18 U.S.C. § 3553(a)(6)).

#### Nature and Seriousness of the Offenses

20.   The offenses that the defendant committed and have plead guilty to, victimize some of the most vulnerable members of our society, minors under the age of eighteen. In each of the of accounts of the victim's in this case, they were runaways from home or group home placements. The victims were already from unstable and dysfunctional environments. The defendant trolled the streets looking for young girls to use as prostitutes and to use for his sexual pleasures. The defendant's conduct made what was a bad situation for each of the victims far worse.

21. For numerous years, the defendant earned his living forcing M.S., S.H., T.S. and A.L. to wear sexually provocative clothes, walk the streets of Washington, D.C., and solicit and offer various sexual services in exchange for money. The victims usually worked every night that they were working for the defendant and had a nightly quota. The defendant received thousands of dollars as a result of prostituting the victims. As if prostituting the young girls was not bad enough, the defendant regularly had unprotected sex with the victims. The defendant also provided them with narcotics.

22. While working for the defendant, the victims were required to provide various forms of sexual services such as vaginal sex, anal sex, and fellatio with literally hundreds of men they did not know. The defendant told the victims the prices to charge for these crimes. Theses sex crimes were performed on a daily basis on the streets, in alleys, cars, and in hotel rooms. Everyday the defendant exposed the victims to violence and risks. The girls risked being robbed, assaulted, and kidnaped by other pimps. The victims also faced the extreme risk of contracting HIV and other sexually transmitted diseases.

23. The defendant's actions have permanently altered the lives of each of the victims. The experience of being a juvenile prostitute undoubtedly will have an impact upon any future relationships they have with others. This sordid part of their past will forever be a part of their future.

24. The defendant's conduct also impacted the community at large. Arguably, the defendant's actions continued to bring violence and criminal activity into the communities where the victims worked for him as prostitutes. As a result, there would be constant foot traffic by the prostitutes walking up and down the streets. There was increased vehicular traffic from individuals

coming from other areas to solicit prostitutes. Additionally, pimps, such as the defendant, would stay very close to their prostitutes and were often times armed.

History and Characteristics of the Defendant

25.     The defendant is a 43 year-old male. The Court should take into consideration the defendant's entire criminal history, including his arrests. The defendant has three convictions for battery, solicitation for a lewd purpose and attempted threats. He has had contact with the criminal justice system dating back to 1987. The defendant has been arrested no less than 25 times for crimes including assault with a weapon, assaults, false imprisonment, human trafficking and theft.

26.     The defendant engaged in all of these offenses while his two minor daughters and his son were living at his residence. The defendants children lived in an environment where there were guns, drugs, and juvenile prostitutes. Not only has the defendant marred the lives of his victims, but he irreparably harmed his own children.

Need for the Sentence to be Imposed

27.     The government has considered what would be an appropriate sentence for the defendant, balancing the seriousness of the offense, the need for just punishment, the threat the defendant poses to the community, and affording adequate deterrence to criminal conduct.

28.     The defendant is an adult who profited from the degradation of these victims who worked for him a juvenile prostitutes. His criminal conduct has contributed to the demand for juvenile prostitutes. The defendant also effectively encouraged other individuals to participate or keep engaging in criminal activity by seeking out these minor prostitutes. Rather than work a legal job, the defendant voluntarily chose to engage in this activity. A lengthy sentence will also serve to deter this same kind of criminal conduct by others. A consideration of all of the factors set forth in

18 United States Code Section 3553(a) leads to the conclusion in this case that sentence of imprisonment of 240 months on each count, to run concurrently, is justified and warranted. The plea agreement and the sentencing recommendation have adequately considered the defendant's acceptance of responsibility.

29.     Finally, based on the offense conduct and the underlying facts, restrictions must be imposed on the defendant as conditions of supervised release.  Therefore, we request that the Court impose mandatory compliance with the Sex Offender Registration, substance abuse treatment, sex offender treatment, and educational or vocational training.  We also request that a period of supervised release of 30 years be imposed on the defendant for each count, to run concurrently.  Additionally, restitution in this case is mandatory.  The government's request for restitution and order for forfeiture will be made by way of a separate filing.

**CONCLUSION**

WHEREFORE, based upon the above, and the information reflected in the Presentence Report, the United States respectfully requests that the defendant be sentenced in accordance with the government's recommendation.

Respectfully,

_____
RONALD C. MACHEN JR.
UNITED STATES ATTORNEY


By: _____/s/_____

BRIDGETTE CRAFTON TILLMAN
ASSISTANT UNITED STATES ATTORNEY
NJ Bar # 081051996
United States Attorney's Office
555 Fourth Street, N.W., Room 4-4838
Washington, D.C. 20530
Phone: (202) 514-7561
Bridgette.Tillman@usdoj.gov